McClendon, j.
| ¡¡Plaintiffs appeal a judgment that held LSA-R.S. 12:1502 to be the controlling prescriptive/peremptive period as to one of the co-defendants, thereby limiting claims against that co-defendant to a period of three years. For the following reasons, we conclude that the trial court improperly certified the judgment as final under LSA-C.C.P. Art. 1915B and dismiss the appeal.
FACTS AND PROCEDURAL HISTORY
Capital Management Consultants, Inc. (“CMC”) is a Louisiana corporation incorporated in 1982 by Peter Guarisco and James Scott Tucker, who served as the initial officers and directors and continued *841 serving in those capacities until their deaths. Mr. Guarisco died in 2005, and Mr. Tucker died in January 2014.
In 1982, Karen Duhon was hired by CMC to work as a part-time bookkeeper. Also, since the 1980s, Donnasue Peveto was employed by Guarisco-related companies as an inventory clerk, secretary, and receptionist.
In December 2014, CMC, along with the heirs of Mr. Guarisco, who are also shareholders in CMC,[1] filed a petition for damages, naming, among others, Karen Duhon, Donnasue Peveto,[2] and the co-administrators of the Succession of James Scott Tucker as defendants.[3] Plaintiffs allege, among other things, that throughout their employment until Mr. Tucker’s death, Tucker, Duhon, and Peveto “engaged in an array of schemes ... to defraud, fraudulently convert, steal[,] and embezzle mon[ie]s and property from Petitioners and to manipulate the corporate and personal ledgers of the Petitioners herein.” Plaintiffs also allege that “[b]y working in concert [defendants] were able to steal vast sums of money from the Petitioners and to hide the theft because they were the ‘controls, checks and balances.’ ” For instance, plaintiffs allege that “Karen Duhon and Donnasue Peveto, among other things, and with James Scott Tucker’s assistance and approval, submitted false requests for reimbursement of Uexpenses, submitted the requests for reimbursement of an actual expense^] ... add[ed] $9,000.00 or more to the check total, [and] created loans for themselves that James Scott Tucker would write off at a later date against land, art, costs or other transactions or expenses.”
Prior to the instituting the current action, on August 4, 2014, plaintiffs also filed an intervention in Mr. Tucker’s succession proceeding, seeking to recover for the alleged wrongful acts of Mr. Tucker.
In May 2015, two of the co-administrators for Mr. Tucker’s succession filed a “Peremptory Exception of Prescription” in the proceedings before us on appeal. Therein, they asserted that because Mr. Tucker was an officer and director of CMC, the three-year peremptive period found in LSA-R.S. 12:1502 relative to corporate officers applies to the exclusion of all other prescriptive periods. The co-administrators asserted that any claims arising from acts that occurred before August 4, 2011 (three years prior to plaintiffs raising these claims in Mr. Tucker’s succession proceeding) were time barred.
The plaintiffs opposed the co-administrators’ motion, asserting among other things, that the two-year prescriptive period from discovery found in former LSA-R.S. 12:96,[4] the one-year prescriptive period for delictual actions set forth in LSA-C.C, Art. 3492, and/or the ten-year prescriptive period for personal actions set forth in LSA-C.C. Art. 3499, applied to Mr. Tucker’s acts.
Following a hearing on the co-administrators’ motion, the trial court concluded that LSA-R.S. 12:1502 covering corporate officers provided the applicable preserip- *842 tive period for Mr. Tucker’s acts because “[a]U alleged actions were taken as an officer, director, manager, or shareholder of [CMC],” and that plaintiffs could not recover for any alleged acts occurring pri- or to August 4, 2011. On August 17, 2015, the trial court signed a judgment that granted the co-administrators’ peremptory exception of prescription, and dismissed plaintiffs' claims against the co-administrators of Mr. Tucker’s succession, with prejudice, for acts arising prior to August 4, 2011.' However, Rail claims for Mr. Tucker’s actions arising after August 4, 2011, are still pending. Further, the claims against the other co-defendants remain outstanding and have not been limited by the prescriptive period set forth in LSA-R.S. 12:1502.[5] Nevertheless, the trial court designated- the August-17, 2015 judgment as a final- judgment “after an express determination that there is no just reason for delay.” Plaintiffs filed, a motion for new trial, which was subsequently denied by the trial court.
Plaintiffs have now appealed, assigning the following as error:
The [Trial] Court improperly applied the peremptive period found in La. R.S. 12:1502 to Plaintiffs claims, despite the clear and unambiguous language of La. R.S.. 15:1356(H) and the provisions of. La. R.S. 12:96, La. C.C. Art. 2030 and La, C.C. Art. 2032.
The [Trial] Court’s ruling improperly rendered La. R.S'. 16:1356’s language meaningless in violation of La. C.C. Art. 2030.
The [Trial] Court improperly found that James Scott Tucker’s intentional act of theft, conversion and racketeering was done in his capacity as an officer of Capital Management Consultants, Inc. and not done for his own personal benefit.' .
DISCUSSION
’ The judgment before us was certified as a final judgment in accordance with LSA-C.C.P. Art. 1915B. Before we consider the merits of the appeal, we must determine whether the judgment is properly certified. The August 17, 2015 judgment at issue merely limited, the claims that could, be asserted' against Mr. Tucker’s succession and is not a final judgment under LSA-C.C.P. Art. 1841, Nor is .it a final judgment for. purposes of an immediate appeal under the provisions of Article. 1915A. Therefore, this court’s jurisdiction depends upon whether the judgment was properly designated and certified as a final judgment pursuant to Article 1915B(1), See also LSA-C.C.P. Art. 1911B and 2083. Although the trial court designated the judgment as. being final and appealable under Article 1915B, .that designation is not determinative of -this court’s jurisdiction. Van ex rel. White v. Davis, 00-0206 (La.App. 1 Cir. 2/16/01), 808 So.2d 478, 480. Appellate courts have the duty to examine subject matter jurisdiction sua sponte, even when the parties do not raise the issue. Motorola, Inc. v. Associated Indemnity Corporation, 02-0716 (La.App. 1 Cir. 4/30/03), 867 So.2d 715, 717. If no reasons for the certification are given but some justification is apparent from the record, the appellate court should make a de novo determination of whether the certification was proper. R.J. Messinger, Inc. v. Rosenblum, 04-1664 (La. 3/2/05), 894 So.2d 1113, 1122.
Historically, our courts have had a policy against multiple appeals and *843 piecemeal litigation. Article 1915B attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties. Thus, in considering whether a judgment has been properly designated as final and appealable pursuant to Article 1915B, a trial court must take into account judicial administrative interests as well as the equities involved. Id.; Templet v. State of Louisiana, Department of Public Safety and Corrections, 05-1903 (La. App. 1 Cir. 11/3/06), 951 So.2d 182, 185. Some of the factors a trial court should take into account in making an Article 1915B certification are the relationship between the adjudicated and unadjudicated claims; the possibility that the need for review might or might not be mooted by future developments in the trial court; the possibility the reviewing court' might be obliged to consider the same issue a second time; and miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. R.J. Messinger, Inc., 894 So.2d at 1122. However, the overriding inquiry, for the trial court is whether there is no just reason for delay. Id. at 1122-23.
Here, many of the claims asserted by plaintiffs against Mr. Tucker for acts occurring prior to August 4, 2011, are also being raised as part of a larger scheme against other co-defendants, who plaintiffs claim were co-conspirators. Specifically, plaintiffs allege, in part, that “[b]y working in concert [the defendants] were able to steal vast sums of money from the [plaintiffs] and to hide the theft because they were the ‘controls, checks, and balances.’ ” Many of the claims extending beyond the three-year period raised against the co-defendants are related to many claims asserted against Mr. Tucker. We also note that the trial court has denied a similar exception of prescription, raised by Ms. Duhon, wherein she asserted that LSA-R.S. 12:1502 applied |7to limit the claims against her to a three-year .peremptive period because she began acting as “Secretary-Treasurer” in 2007. In denying the motion, the trial court stated:
The basis,of the Exception [o]f Prescription is that she acted as an officer of the corporation; therefore she is entitled to the protection of 1502. At this time I’m going to find that defendant has not proven she is an officer; therefore she is not entitled to 1502. That does not preclude her from, at a later date, proving that she was the Secretary; that she was an officer, and re-urging the Exception [o]f Prescription, which can be done any time before Judgment.
As such, even were this court to affirm or reverse the trial court’s ruling, this court may have to consider the applicability of the prescription under LSA-R.S. 12:1502 again in the context of the claims asserted against the co-defendants. Further, the trial would not be significantly shortened nor would these issues be entirely, resolved in light of the claims asserted against the co-defendants, which have not been so restricted.
Moreover, the trial court may determine that a shorter prescriptive period could apply. We note that Ms. Duhon has also asserted that the claims against her were subject to a one-year prescriptive period because the allegations against her all concerned “theft” or “conversion.” In denying relief, the trial court made the following pertinent observations:
there hasn’t been sufficient evidence to establish whether the alleged activity falls under racketeering, or under conversion, or some other prescriptive period. That doesn’t mean that prescription hasn’t—I am not making a finding that *844 prescription has not run. I am making a • finding that 'there is not sufficient evidence to determine if prescription has run. That issue can still-.be litigated as more evidence is developed.
Given the nature of the claims and the procedural posture of this case, we are constrained to find that addressing the issues at this time would promote piecemeal appeals. Accordingly, on our de novo review, we cannot conclude that there is no just reason for delay. Therefore, the certification does not meet the R J. Messinger, Inc. requirements, and we dismiss the appeal.[6]
[«CONCLUSION
For the foregoing reasons, we dismiss the plaintiffs’ appeal without prejudice. We also lift the stay issued by this court on February 10, 2017.[7] Costs of this appeal are assessed to appellants, Capital Management Consultants, Inc., Laura Lea Guarisco, Leah K. McGriff, Victor Guaris-co, Elizabeth Mercedes Guarisco, and Maria Cedes Guarisco.
APPEAL DISMISSED; STAY LIFTED.

. The named plaintiffs are Laura Lea Guaris-co, Victor Guarisco, Maria Cedes Guarisco, Elizabeth Mercedes Guarisco, are Leah McGriff.

. Donnasue Peveto died on March 27, 2016.

. Plaintiffs also named Karen Duhon's husband, Armond A. Duhon, and ABC Siding Company of Morgan City, Inc., which is owned and operated by the Duhons, as defendants.

.Pursuant to Acts 2014, No. 328, § 5, LSA-R.S. 12:96 was repealed effective January 1, 2015.

. Karen Duhon also filed an exception of prescription urging that the period found in LSA-R.S. Í 2:1502 applied to her acts as "Secretary-Treasurer,” but the trial court denied her exception.

. While plaintiffs are concerned that discovery for claims against Mr. Tucker beyond the three-year period may be limited, we recognize that the information may still be discoverable if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. LSA-C.C.P. Art. 1422. Given the allegations of a conspiracy to defraud, fraudulently convert, steal, and embezzle monies and property among the co-defendants, discovery against Mr. Tucker may not necessarily be limited to the three-year time frame if such discovery could potentially lead to admissible evidence. See Lehmann v. American Southern Home Ins. Co., 615 So.2d 923, 925 (La.App. 1 Cir.), writ denied, 617 So.2d 913 (La. 1993).

. Appellees filed a motion to rescind the stay on March 7, 2017. Because we lift the stay in connection with our resolution, we deny the appellees’ motion as moot.